IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES,<br><br>                    Plaintiff,<br>v.<br><br>KIERSTEN RUBY-BURROW,<br><br>                    Defendant. | **MEMORANDUM DECISION AND ORDER DENYING MOTION TO SUPPRESS**<br><br>Case No. 2:15-cr-00092-DB<br><br>District Judge Dee Benson |

    This matter is before the Court on Defendant's motion to suppress. (Dkt. No. 41.) On November 17, 2015, the Court conducted an evidentiary hearing on the motion. Defendant Kiersten Ruby-Burrow (Ruby-Burrow) was present and represented by James D. Garrett. Stewart M. Young represented the United States. Following the hearing, the Court ordered a transcript and set a briefing schedule. On December 8, 2015, Ruby-Burrow declined additional briefing and submitted the motion to suppress for a decision on the prior briefs. (Dkt. No. 58.) After thorough review and consideration of the initial memoranda submitted by the parties and the testimony presented at the evidentiary hearing, the Court renders the following Memorandum Decision and Order.

## **Background**

    The Court finds the relevant facts as follows.[1] Trooper Tucker Harris (Trooper Harris) has been employed as an officer with the Utah Highway Patrol (UHP) for the past three and a half years. (Tr. at 5:12–17.) On February 5, 2015, at 11:30 a.m., Trooper Harris was dispatched

---

[1] Reference to the transcript of the evidentiary hearing conducted on November 17, 2015 will be cited as "Tr. at __."

to a traffic accident on I-15 northbound on the 5300 South off-ramp in Murray, Utah. (Tr. at 6:11–16.)

Trooper Harris has several duties when investigating a traffic accident, including identifying the parties involved, ensuring each driver has a valid driver's license, and determining each vehicle is properly registered and has the insurance required by Utah law. (Tr. at 7:21–25; 8:1–4.) Additionally, when an accident is reported, a Department of Public Safety (DPS) dispatcher will advise drivers of the accident's designated staging location. (Tr. at 9:1–8.) Staging locations are selected by DPS so that DPS dispatchers may direct drivers off of the highway to a safer location where the accident may be resolved. (Tr. at 9:1–9.)

If vehicles involved in an accident have not moved to the staging location prior to a trooper's arrival, UHP's practice is to move vehicles off of the highway to the accident's staging location so that the accident may be investigated safely. (Tr. at 9:12–16.) The staging location for accidents that occur near 5300 South is the UHP Murray office, which is located approximately one half-mile from the 5300 South off-ramp. (Tr. at 9:7–11.) According to Trooper Harris, 5300 South is a high accident area due to the I-215 South interchange located nearby. (Tr. at 8:10–12.)

Trooper Harris arrived at the accident at 11:32 a.m and observed two vehicles stopped on the 5300 South freeway off-ramp, a blue Chrysler minivan and a green Chevrolet pickup truck. (Tr. at 6:18–19; 21:13; Def.'s Ex. 1[2] at 11:32:05.) Ruby-Burrow was the driver of the green pickup truck and her co-defendant, Joseph Bateman (Bateman), was the passenger. (Tr. at 31:4–5; 9:24–25; 26:23–24.) Trooper Harris identified both drivers and questioned each driver about the cause of the accident. (Tr. at 7:2–6; 9:21–22.) Ruby-Burrow claimed the blue minivan had moved into her lane before breaking rapidly, which caused her to hit the blue minivan. (Tr. at

---

[2] Defendant's Exhibit 1 is a recording from Trooper Harris's dash camera.

7:4–6.) Trooper Harris provided Ruby-Burrow and the driver of the blue minivan with driver information forms to complete. (Tr. at 11:12–15.)

Next, Trooper Harris questioned Bateman, the owner of the pickup truck, about proof of insurance. (Tr. at 10:10–16.) Bateman provided Trooper Harris several insurance documents that were expired. (Tr. at 10:18–20.) Based on the location of the accident and the location of the drivers in relation to the highway, Trooper Harris became concerned for his safety and the safety of the parties. (Tr. at 8:18–23; 34:12–14.) At approximately 11:50 a.m., Trooper Harris asked both drivers to follow him to the UHP Murray office, the accident's staging location, so that Trooper Harris could conclude his administrative tasks at a safer location off of the highway. (Tr. at 11: 9–15; 21:16.)

Upon arriving at the UHP Murray office, Trooper Harris requested that both drivers continue filling out accident paperwork. (Tr. at 12: 5–7.) While the drivers were completing accident paperwork, Trooper Harris contacted Bateman's insurer who informed Trooper Harris that Bateman's insurance had been canceled in 2014. (Tr. at 12:5–15.)

After determining Bateman's pickup truck was uninsured, Trooper Harris contacted DPS dispatch and requested a state tax impound pursuant to DPS policy and Utah code. (Tr. at 15:8–9; 16:10–11.) Up until this point in Trooper Harris's investigation, neither Ruby-Burrow nor Bateman were handcuffed or secured by Trooper Harris. (Tr. at 20:2–6.) Subsequently, Trooper Harris performed an inventory search of the Bateman's vehicle pursuant to DPS policy. (Tr. at 17:17–23; Pl.'s Ex. 5.[3]) Based on the fruits of Trooper Harris's inventory search, Ruby-Burrow was indicted pursuant to 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 for possession of methamphetamine with intent to distribute and aiding and abetting. (Dkt. No. 1.)

---

[3] Plaintiff's Exhibit 5 is a copy of DPS Policy 704, which governs DPS's Vehicle Towing and Vehicle Inventory policies.

## Discussion

Ruby-Burrow contends that Trooper Harris violated the Fourth Amendment by escalating a routine traffic stop into a *de facto* arrest when Trooper Harris requested the parties to follow him to the UHP Murray office. (Dkt. No. 41, p. 3–4.) Ruby-Burrow argues that Trooper Harris lacked probable cause to arrest Ruby-Burrow; therefore, any evidence found subsequent to her removal to the UHP Murray office should be suppressed. (*See id.*)

The Fourth Amendment to the United States Constitution provides, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV. The Fourth Amendment does "not . . . guarantee against *all* searches and seizures, but only against *unreasonable* searches and seizures." *United States v. Sharpe*, 470 U.S. 675, 682 (1985) (emphasis in original). To determine whether "an investigative detention . . . is reasonable under the Fourth Amendment, the inquiry is twofold." *United States v. King*, 990 F.2d 1552, 1557 (10th Cir. 1993). First, the Court must ask whether the officer's action was "'justified at its inception.'" *Id.* (quoting *Terry v. Ohio*, 392 U.S. 1, 20 (1968)). Second, the officer's action must be "reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* "The government has the burden of demonstrating 'that the seizure . . . was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure.'" *United States v. Purdue*, 8 F.3d 1455, 1462 (10th Cir. 1993) (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983)).

**I. Trooper Harris's investigation was justified at it its inception.**

"The Fourth Amendment requires only a 'minimal level of objective justification'" for an investigatory detention, which is "'considerably less than proof of wrongdoing by a

preponderance of the evidence.'" *United States v. Melendez-Garcia*, 28 F.3d 1046, 1051 (10th Cir. 1994) (citations omitted).  "An officer arriving at the scene of [a traffic] accident . . . may ask a person apparently involved in the accident a moderate number of questions to determine whether he should be issued a traffic citation, whether there is probable cause to arrest him, or whether he should be free to leave after the necessary documentation has been exchanged." *Cordoba v. Hanarahn*, 910 F.2d 691, 693–94 (10th Cir. 1990) ("[T]he investigation of an automobile accident is analogous to the investigative detention sanctioned in *Terry* because an automobile accident is sufficient to support a police officer's reasonable suspicion that a traffic violation has occurred."), *abrogated on alternative grounds in United States v. Erving*, 147 F.3d 240 (10th Cir. 1998).

      The Court finds that Trooper Harris was justified, initially, in detaining Ruby-Burrow to investigate the cause of the accident.  Upon arriving at the scene, Trooper Harris performed his duties in textbook fashion.  Trooper Harris identified both parties and questioned both drivers about the cause of the accident.  (Tr. at 7:2–6; 9:21–22.)  Further, Trooper Harris requested vehicle registration and proof of insurance from both parties.  (*Id.*)  The issue in this motion is whether Trooper Harris exceeded the permissible bounds of the investigation by requesting both parties to follow him to the UHP Murray office.

**II. Trooper Harris was reasonable and justified in removing the parties from the highway so that his investigation could be completed at a safer location.**

      An investigative detention may be "unreasonable because it is 'a more serious intrusion on [one's] personal liberty than is allowable on mere suspicion of criminal activity.'" *King*, 990 F.2d at 1558 (quoting *Florida v. Royer*, 460 U.S. 491, 502 (1983)); *see United States v. Place*, 462 U.S. 696, 709–10 (1983).  Importantly, the government bears the burden of showing the officer's actions "'during the detention were reasonably related in scope to the circumstances

which justified the interference in the first place.'" *United States v. Paraza-Cabrera*, No. 2:04-cr-00164, 2004 WL 1638247, at *6 (D. Utah July 21, 2004) (quoting *Terry*, 392 U.S. at 20.); *see also King*, 990 F.2d at 1558.  The Court finds that Trooper Harris's actions were both reasonable and justified based on Trooper Harris's authority under Utah law and the circumstances surrounding the accident.

Utah code authorizes Trooper Harris to remove any vehicle damaged in an accident from the highway.  Utah Code Ann. § 41-6a-401.9(1) states: "As a result of a motor vehicle accident, a law enforcement agency with jurisdiction may, without the consent of the owner or carrier, remove a vehicle . . . that . . . has been damaged or spilled within . . . any portion of the roadway on the state highway system."  Bateman's pickup truck and the blue minivan sustained damage in the accident; therefore, Trooper Harris had the authority to remove both vehicles from the 5300 South off-ramp.

Furthermore, Utah Code requires a vehicle owner to maintain proper security or insurance when operating a vehicle on Utah's roadways.  *See* Utah Code Ann. § 41-12a-301.  Pursuant to Utah Code Ann. § 41-1a-1101(2)(a), Trooper Harris has the authority to "seize and take possession of any vehicle that is being operated on a highway without owner's or operator's security in effect for the vehicle as required under Section 41-12a-301 . . . ."  In this case, Bateman provided Trooper Harris with several insurance documents that were expired.  (Tr. at 10:18–20.)  At that point in the investigation, Trooper Harris could reasonably conclude that Bateman's vehicle was likely to be impounded pursuant to § 41-1a-1101(2)(a).  Instead of placing himself and the parties in further danger, Trooper Harris asked both drivers to follow him to the accident's staging location, the UHP Murray office, so that he could confirm Bateman's lack of insurance at a safer location.  (Tr. at 11: 9–15; 21:16.)  It is axiomatic that when safety is

a concern, an officer should be provided wide latitude to perform his duties in the safest manner possible to protect both himself and the parties involved.  *See e.g.*, *L.A. County v. Rettele*, 550 U.S. 609, 611 (2007) ("In executing a search warrant officers may take reasonable action to secure the premises and to ensure their own safety and the efficacy of the search."); *Maryland v. Buie*, 494 U.S. 325, 334 (1990) (allowing officers to conduct protective sweeps when executing search warrants to ensure officer safety).  Therefore, the Court finds that Trooper Harris's actions were reasonable and within the scope of his investigation.

Ruby-Burrow cites *United States v. Gonzalez*, 763 F.2d 1127 (10th Cir. 1985) and *United States v. Recalde*, 761 F.2d 1448 (10th Cir. 1985) for the proposition that once Ruby-Burrow was transported to a police station, Trooper Harris escalated the investigative detention into a *de facto* arrest.  In *Gonzalez* and *Recalde*, officers removed a defendant from the original scene of a traffic stop to conduct further investigation at a police station.  *Gonzalez*, 763 F.2d at 1132; *Recalde*, 761 F.2d at 1456.  The Tenth Circuit held in both cases that by removing the defendant to the police station for further questioning, officers elevated a routine traffic stop into a *de facto* arrest.  *Id.*  However, *Gonzalez* and *Recalde* do not mean that transportation to a police station *per se* elevates an investigation into a *de facto* arrest.  In this case, it was a mere coincidence that the accident's staging location was a police station.  Had the accident occurred on a different portion of I-15, Trooper Harris conceivably would have moved the parties to the accident's staging location, confirmed Bateman's pickup truck lacked insurance, ordered a vehicle impound, and performed an inventory search.  A different staging location would not have altered the outcome of Trooper Harris's investigation.

Further, up until Trooper Harris requested a state tax impound of Bateman's vehicle, Ruby-burrow and Bateman were never placed in handcuffs, they were not secured, and neither

defendant was placed in an interrogation room.  (Tr. at 20:2–6.)  Trooper Harris did not elevate his investigation into a *de facto* arrest by requesting the parties move to a safer location to complete accident paperwork.

### Conclusion

It was plainly reasonable for Trooper Harris to move the parties out of harm's way while he completed his investigation.  A holding to the contrary by this Court would encourage police officers to remain on the highway while investigating an accident, even if the lives of the officer and parties are at risk.  The Fourth Amendment does not require Trooper Harris to place himself or Ruby-Burrow in danger; rather, the Fourth Amendment merely demands reasonableness.  The Court finds Trooper Harris's actions were reasonable and appropriate under the circumstances.  Ruby-Burrow's Fourth Amendment rights were not violated.  Ruby-Burrow's motion to suppress is DENIED.

Dated: December 15, 2015.

                                              BY THE COURT:

                                              Dee Benson
                                              United States District Judge